# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3195 | **DATE** | 5/7/2003 |
| **CASE TITLE** | Carroll M. Baker vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment [8-1] is granted to the extent that this court reverses and remands the Commissioner's decision, but denied to the extent that plaintiff seeks a reversal and award of benefits. The court reverses the Commissioner's final decision and remands this case to the ALJ for further proceedings.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 08 2003 | |
| | Notified counsel by telephone. | | date docketed | 17 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 5/7/2003 | |
| | | | date mailed notice | |
| IS | courtroom deputy's initials | | IS | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **CARROLL M. BAKER,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 02 C 3195 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| **JO ANNE B. BARNHART,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**DOCKETED**

MAY - 8 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Carroll M. Baker seeks judicial review of the final decision of the Commissioner

of Social Security ("Commissioner") that she was not entitled to Disability Insurance Benefits

("DIB")[1] pursuant to 42 U.S.C. § 405(g).[2] Before this Court are Plaintiff's motion for summary

judgment, which seeks a reversal or remand of the denial of her claim, and the Commissioner's

motion for summary judgment, which seeks to uphold its decision. Both parties have consented

to have this Court conduct any and all proceedings in this case, including the entry of final

---

[1] Disability Insurance Benefits provide a minimum level of benefits to persons under age 65 who: a) have a disability as defined in 20 C.F.R. § 404.1505; and b) qualify as fully insured by having sufficient Social Security earnings as provided in 20 C.F.R. § 404.130. *See* 20 C.F.R. § 404.320(b).

[2] "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . . Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . ." 42 U.S.C. § 405(g).

judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(b). For the reasons set forth below, this Court reverses the Commissioner's final decision and remands this case for further proceedings.

## I. **Procedural History**

On February 9, 2000, Baker applied for DIB, alleging disability since February 21, 1999. (R. at 72.) After the application was denied both initially and on reconsideration, Baker requested a hearing before an administrative law judge ("ALJ"). (R. 45-48, 56.) The ALJ's hearing was conducted on April 25, 2001, where Baker, who was represented by counsel, and a vocational expert testified. (R. at 19-43, 56.) On August 28, 2001, the ALJ issued his decision that Baker was not disabled. (R. at 10-17a.) This decision became the final decision of the Commissioner on March 14, 2002, when the Appeals Council denied Baker's request for review. (R. at 4-6.) *See* 20 C.F.R. § 422.210(a). Baker now seeks judicial review of that decision.

## II. **Facts and Medical History**

Baker was born on February 26, 1954, and was forty-seven years old at the time of the ALJ's decision. (R. at 23, 72.) Baker completed the ninth grade, and has a variety of past work experiences. (R. at 24, 90, 98-103.) She has worked as a solderer, a home health care attendant, a sorter in a factory, and a car porter for a rental company. (R. at 90, 98-103.) Baker's last job was as a hotel housekeeper. (R. at 98.)

While working at this last job, Baker slipped and fell in February 1999. (R. at 25-26.) She was taken to an emergency room, where she was seen for ankle pain. (R. at 26, 156.) Dr. Miller, an emergency room doctor, diagnosed Baker with a moderate sprain, and Baker complained the next day of right lower leg pain. (R. at 26.)

Baker began a course of physical therapy, but complained of lower back pain while walking. (R. at 200-18.) In March 1999, mild degenerative changes were observed in a cervical spine x-ray, along with well-preserved disc spaces. (R. at 158.) Baker was discharged from therapy on May 13, 1999, when she was found to have met all her objective goals and to be functionally well. (R. at 218.) However, Baker still complained of subjective back pain. (Id.)

In June 1999, an MRI study revealed a herniated[3] disk at L4-L5. (R. at 159.) In December 1999, Dr. Raghu Singh, a neurologist, performed an operation on Baker's spine to treat radiculopathy.[4] (R. at 27, 231.) This elective back surgery consisted of a microlumbar hemilaminectomy[5] at L4-L5 on the left, a foraminotomy[6] at L4-L5 on the left, and the removal of a herniated disk at L4-L5. (R. at 229-31.)

In February 2000, Baker was involved in an automobile accident. (R. at 28.) In March 2000, Dr. Suresh Mahawar performed a consultative examination on Baker in connection with her disability claim. (R. at 240-43.) Dr. Mahawar noted Baker's medical history and her complaints of a history of back pain. (R. at 243.) Mahawar found Baker could bend forward 78°

---

[3] Herniated: denoting any structure protruded through a hernial opening. STEDMAN'S MEDICAL DICTIONARY, FIFTH UNABRIDGED LAWYERS ED., 643 (1982), hereinafter "STEDMAN'S."

[4] Radiculopathy: a disease of the spinal nerve roots. STEDMAN'S at 1187.

[5] Hemilaminectomy: removal of a portion of a vertebral lamina, usually performed for exploration of, access to, or decompression of the intraspinal contents; often used to denote unilateral laminectomy. STEDMAN'S at 630.

[6] Foraminotomy: surgical enlargement of the intervertebral foramen. STEDMAN'S at 550. Intervertebral foramen: one of a number of openings into the vertebral canal bounded by the pedicles of adjacent vertebrae above and below, the vertebral bodies anteriorly, and the articular processes posteriorly. STEDMAN'S at 549.

out of 90°. (R. at 240.) He also found Baker had no muscle atrophy in any of her extremities. (R. at 241.) He found her gait to be mildly antalgic[7] without a cane, and that she should be able to walk 100 to 200 feet without assistance. (Id.) He also found she was able to bear weight. (Id.) Dr. Mahawar found that Baker had severe difficulty walking on her toes and hopping on one leg, and mild difficulty walking on her heels and rising from a squat. (Id.) He diagnosed Baker as having chronic neck pain with a history of cervical radiculopathy, and chronic lower back pain with mild degenerative joint disease and a history of lumbar radiculopathy. (Id.) Dr. Mahawar's examination also revealed no abnormalities in Baker's extremities. (R. at 242.) Baker was found to be neurologically intact with normal strength and sensation. (Id.)

In April 2000, Dr. Singh performed a computed tomography (CT) scan of Baker's spine. (R. at 244-45.) This scan was interpreted as "grossly normal," and also showed a herniated disk at L4-L5. (R. at 244.) In May 2000, Dr. Singh diagnosed Baker as having low back pain with radiculopathy, along with weak reflexes and sensory loss in the L5 dermatome.[8] (R. at 254.) Dr. Singh also found that the straight leg raising test was positive; that Baker could bend forward 70° out of 90°; and that Baker had muscle spasms along the lumbosacral spine. (R. at 253-54.) In June 2000, Dr. Singh performed a second surgery on Baker to remove her recurrent herniated disk. (R. at 256-58.)

In March and June 2000, Baker's medical evidence was reviewed by state agency physicians Virgilo Pilapil, M.D., and Reynaldo Gotanco, M.D. (R. at 116-23.) They concluded

---

[7] Antalgic: characterized by reduced response to painful stimuli. STEDMAN'S at 83.

[8] Dermatome: the area of skin that is supplied by cutaneous branches from a single spinal nerve; neighboring dermatomes overlap to a considerable extent. STEDMAN'S at 381.

Baker could lift twenty pounds occasionally and ten pounds frequently, as well as sit, stand, and walk for a total of six hours in an eight-hour workday. (R. at 117, 123.) The physicians also concluded that Baker was occasionally limited from climbing ropes, stairs, ramps, ladders and scaffolds. (R. at 118.) They noted that Baker had no muscle atrophy in any of her four extremities.[9] (R. at 123.)

In March 2001, Dr. Singh (Baker's physician) assessed Baker's ability to work. (R. at 262-69.) Dr. Singh reported the following findings:

- Baker could lift as much as five pounds;

- Baker could stand and/or walk for thirty minutes to an hour in an eight-hour day;

- Baker could sit for a total of one to two hours in an eight-hour day;

- Baker could sit thirty minutes to an hour at a time;

- Baker should never climb, balance, stoop, crouch, kneel or crawl; and

- Baker had limited abilities to reach, handle, push, and pull. (R. at 263-69.)

Dr. Singh based these findings on Baker's reported low back and radicular pain. (R. at 265.)

Baker underwent a psychological examination in connection with the proceedings under the ALJ in June 2001. (R. at 270-73.) Dr. Rogers, a clinical psychologist, administered and interpreted the Minnesota Multiphasic Personality Inventory–II test, on which Baker received a high F score which is "a classical indication of exaggerating problem areas." (R. 270, 272-73.) Dr. Rogers found that the scale was essentially invalid. (R. at 270.)

---

[9] She also did not have redness, cyanosis, clubbing, or edema in any of her extremities. (R. at 123.)

Baker has diabetes, for which she takes the medication Glucophage. (R. at 142-47.) She was treated for an episode of uncontrolled diabetes in October 1999. (R. at 222-23.) Baker also has several other conditions: degenerative joint disease, bronchial asthma, and chronic obstructive pulmonary disease. (R. at 234-36, 249.)

Baker testified that she was in pain all day, no matter what she did. (R. at 34.) She also testified she underwent an epidural injection in April 2001, with two more injections scheduled in the future. (R. at 30.) Baker testified that she took pain medication and a muscle relaxant on a daily basis. (R. at 36.) She testified that she used a cane every day, but admitted it was not prescribed by her physician. (R. at 30, 33.) Baker also testified that she went to the grocery store twice a month and would shop if a wheelchair were available. (R. at 110, 130.) She drove short distances, but denied doing laundry. (R. at 31.)

The vocational expert (VE) was asked about the existence of jobs available to a hypothetical person with Baker's age, education, and work experience, with these limitations:

1. Could lift and carry ten pounds;

2. Could perform postural movements (bending, crouching, stooping) less than one-third of the time;

3. Could stand and walk for two hours during an eight-hour workday;

4. Could sit for six hours in an eight-hour day; but

5. Needed the option to change between sitting and standing approximately every 45 minutes.

(R. at 38-39.) The VE testified that such a person could perform Baker's past soldering and sorting work, as well as other jobs available in Chicago. (R. at 39-40.) These included 15,000 small bench assembly jobs, 10,000 cashier jobs, and 5,000 security monitor jobs. (R. at 40.) The

VE also testified that a person who could only sit, stand, or walk for a total of three to four hours a day would not have any available employment. (R. at 41.)

## III.   ALJ's Findings

The ALJ made the following specific findings (as taken verbatim from his August 28, 2001 decision, except as indicated):

1.  The claimant met the disability insured status requirements of the Act on February 21, 1999, the date the claimant stated she became unable to work, and continues to meet them.

2.  The claimant has not engaged in substantial gainful activity since February 21, 1999.

3.  The medical evidence establishes that the claimant has Status post surgery for herniated disc, lumbosacral sprain/strain, and cervical spine sprain/strain, and diabetes mellitus, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4.  The claimant's allegations of symptoms precluding any work are found not credible, and are not consistent with the credible evidence. The claimant's testimony is found credible only to the extent of the limitations found herein for the reasons specified in the body of this decision.

5.  The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for work requiring her to sit for more than 6 hours in an 8-hour day and stand/walk for more than 2 hours in an 8-hour day. The claimant would be limited to lifting no more than ten pounds. Additionally, the claimant has nonexertional impairments that limit her to only infrequent engagement in postural activities such as bending, stooping, and crouching. She would need to be in a work environment where she would have the option of altering her positions between sitting/standing every 45 minutes (20 C.F.R. 404.1545).

6.   The claimant is unable to perform her past relevant work . . . .

7.   The claimant's residual functional capacity of the full range of sedentary work is reduced by the nonexertional limitations noted above.

8.   The claimant is 47 years old, which is defined as a younger individual. (20 C.F.R. 404.1563).

9.   The claimant has a limited education. (20 C.F.R. 404.1564).

10.  The claimant does not have any acquired work skills which are transferable to the skilled or semiskilled work functions of other work. (20 C.F.R. 404.1568).

11.  Based on an exertional capacity for sedentary work, and the claimant's age, education, and work experience, section 404.1569 and Rule 201.18, Table No. 1, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

12.  Although the claimant's additional nonexertional limitations do not allow her to perform the full range of sedentary work, using the above-cited rule as a framework for decision-making, and considering the credible testimony of the vocational expert, there are a significant number of jobs in the national economy which she could perform. Examples of such jobs are small bench assembly worker, cashier, and security monitor. In the Chicago region there are 15,000 of the assembly worker jobs, 10,000 of the cashier jobs, and 5,000 of the security monitor.

13.  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. (20 C.F.R. 404.1520(f)).

(R. at 17-17a.)

## IV. **Discussion**

Social Security regulations require that a claimant suffer from a disability within the meaning of the Social Security Act in order to receive Disability Insurance Benefits. Disability is defined as:

[T]he inability to do any substantial gainful activity[10] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. To meet this definition, you must have a severe impairment,[11] which makes you unable to do your previous work or any other substantial gainful activity which exists in the national economy. To determine whether you are able to do any other work, we consider your residual functional capacity[12] and your age, education, and work experience.

20 C.F.R. § 404.1505(a). The determination of disability involves both medical and vocational issues and requires a five-step process. The five steps are:

Step 1: Is the Claimant presently employed? If yes, the claim is disallowed; if no, the inquiry proceeds to step two.

Step 2: Is the Claimant's impairment "severe," and expected to last at least 12 months? If no, the claim is disallowed; if yes, the inquiry proceeds to step three.

Step 3: Does the impairment meet or exceed one of a list of specific impairments? If yes, the Claimant is automatically disabled; if no, the inquiry proceeds to step four.

Step 4: Is the Claimant able to perform her past relevant work experience? If yes, the claim is denied; if no, the inquiry proceeds to step five where the burden shifts to the Commissioner.

---

[10] Substantial Gainful Activity means work that: (a) Involves doing significant and productive physical or mental duties; and (b) Is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

[11] Disabling Impairment, at 20 C.F. R. § 404.1511(a), is defined as:

an impairment (or combination of impairments) which, of itself, is so severe that it meets or equals a set of criteria in the Listing of Impairments in appendix 1 of this subpart or which, when considered with your age, education, and work experience, would result in a finding that you are disabled under § 404.1594.

[12] Residual Functional Capacity is defined as that which an applicant can still do despite physical and mental limitations imposed by his impairments which affect what he can do in a work setting. 20 C.F.R. § 404.1545(a).

Step 5: Is the Claimant able to perform any other work within her residual functional capacity in the national economy? If yes, the claim is denied; if no, the Claimant is disabled.

*See* 20 C.F.R. § 404.1520; *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ used this five-step process in making his findings, and determined Baker was not disabled at step five. (R. at 17-17a.) Relying on Baker's residual functional capacity and the vocational expert's testimony, the ALJ found that Baker was able to perform sufficient work in the national economy and therefore was not disabled. (Id.)

Section 205(g) of the Social Security Act grants federal courts the authority to review final decisions of the Commissioner with the power to affirm, modify, or reverse, with or without remand to the Commissioner for a rehearing. 42 U.S.C. § 405(g). However, the scope of review this Court must use is quite limited; the Commissioner's decision must be affirmed so long as it is supported by substantial evidence. *See Herron*, 19 F.3d at 333.

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ's finding must be supported by more than a scintilla of evidence, but may be supported by less than the full weight of the evidence. *See id.*; *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir. 1986). The reviewing court must consider all evidence on the record; however, it may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ, because the ALJ must resolve all factual issues and evidentiary conflicts. *Jones v. Shalala*, 10 F.3d 522, 523 (7th Cir. 1993); *Delgado*, 782 F.2d at 82; *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). Therefore, the critical question for

this Court to answer is not whether Baker was disabled, but whether there is substantial evidence in the record to support the Commissioner's decision.

As mentioned above, the ALJ found that Baker satisfied the conditions of step one through four of the five-step disability determination process. (R. at 17-17a.) However, at step five, the ALJ found that Baker's condition would not prevent her from obtaining work in the national economy, and therefore she was not disabled. (Id.) It is the ALJ's findings at step five that Baker disputes. First, Baker claims that the ALJ improperly substituted his judgment for that of Baker's treating physician. Baker argues that the ALJ improperly considered Baker's lack of muscle atrophy rather than her physician's report, and improperly failed to recontact Baker's physician in order to clarify the physician's opinion. Baker also argues that the ALJ improperly relied on erroneous extra-record evidence relating to the strength of Baker's pain medication. Finally, Baker argues that the ALJ erroneously evaluated Baker's activities, and wrongly considered Baker's other litigation in assessing her credibility. Each of these arguments will be addressed in turn.

### A.    The ALJ Did Not Substitute His Own Judgment In Place of the Opinion of Baker's Treating Physician.

Baker argues that the ALJ erred in making his determination that Baker had a sufficient residual functional capacity ("RFC") to allow her to perform sedentary work. She argues that the ALJ did not give sufficient weight to her treating physician's opinion, which found Baker's abilities to be far more limited than the ALJ's final RFC determination. Baker alleges that, rather than giving good reasons for discounting the opinion, the ALJ substituted his own judgment for that of the treating physician.

Generally, more weight is given to the treating physician's opinion because of his familiarity with the claimant's conditions. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). If the ALJ decides that the treating physician's opinion is not entitled to controlling weight, he is required to give good reasons for this conclusion. *See id.*; 20 C.F.R. § 404.1527(d)(2). An ALJ must not "substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford*, 227 F.3d at 870.

Baker argues that because the ALJ cited lack of muscle atrophy as a reason for discounting the opinion, he substituted his own lay medical judgment for that of Baker's treating physician. The ALJ noted specifically: "A person purportedly limited as [Baker's physician] suggests the claimant is, for a period of two years, would certainly have some atrophy. The entire record is devoid of any evidence of atrophy." (R. at 14.) However, the ALJ did not base this statement on his own judgment, but on medical evidence found in the record. The ALJ noted that the consultative examination of Baker performed by Dr. Mahawar pointed out the lack of muscle atrophy. (R. at 14.) The ALJ also relied on the state agency physicians' opinion, noting it was even less restrictive than his own RFC determination. (R. at 16.) The state agency physicians also noted the lack of any muscle atrophy in their opinion. (R. at 123.) While none of these physicians specifically stated that Baker is less limited because of her lack of muscle atrophy, they obviously found the lack of atrophy important enough to note in determining the level of Baker's limitation. Thus, contrary to Baker's argument, the ALJ's partial reliance on the lack of muscle atrophy was supported by medical evidence in the record and was not merely the ALJ's own lay medical judgment.

Baker relies on Social Security Ruling 96-9p to argue that the ALJ's statement about lack of muscle atrophy is per se wrong. This reliance is misplaced. Social Security Ruling 96-9p states that a claimant is usually disabled at step five if she is younger, a limited to unskilled worker, can do sedentary work, and cannot stoop at all. Baker is younger, an unskilled worker, can do sedentary work, and can stoop infrequently. The Ruling makes no mention of muscle atrophy. Baker asks the Court to compare her with the hypothetical claimant in SSR 96-9p and come to the conclusion that because this hypothetical claimant is usually disabled and may show no sign of muscle atrophy, muscle atrophy (or lack thereof) is irrelevant to her disability determination. This proposed conclusion is based on Baker's assertion that, with the exception of stooping infrequently as opposed to being unable to stoop, Baker is the same as the hypothetical claimant. However, this interpretation of the Ruling would prevent an ALJ from considering any evidence other than that listed in Social Security Ruling 96-9p. This is plainly wrong because an ALJ must consider "all the available evidence." 20 C.F.R. § 404.1529(c)(1). Thus, SSR 96-9p does not prevent the ALJ from considering Baker's lack of muscle atrophy.

**B.      The ALJ's Conclusion Regarding the Opinion of Baker's Physician Was a Proper Weighing of Medical Evidence, and Did Not Require the ALJ to Contact Baker's Physician.**

Baker also argues that the ALJ improperly speculated that the opinion of Baker's physician was based on her subjective complaints. Therefore, Baker argues, the ALJ was required to contact the physician to clarify the issue. The ALJ must contact a physician to seek additional evidence when the physician's medical report contains a "conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to

be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(e)(1). Baker also correctly points out that a decision based on speculation cannot be considered to be supported by substantial evidence. *White v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999).

However, the ALJ's finding that the opinion was based on subjective complaints cannot be considered speculative. Rather, the ALJ relied on the physician's opinion and treatment notes in making this determination, as well as a comparison with the objective evidence found in the consultative examination report. (R. at 14-15.) The ALJ based his conclusion not on speculation, but on the weight of the medical evidence before him. The ALJ may give less deference to a physician report that is based on the claimant's statements. *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995). The treating report clearly relied on Baker's subjective complaints. Because there was no ambiguity or conflict to be resolved, the ALJ was not required to contact the treating physician for additional evidence.

### C. The ALJ Erred in Relying on Extra-Record Evidence to Determine the Severity of Baker's Pain.

Baker argues that procedural due process requires pre-decision notice of the ALJ's reliance on THE PILL BOOK to determine the strength of her medication. The ALJ used THE PILL BOOK to find the indication for Vicodin–namely, that it is used for mild to moderate pain. According to Baker, notice would have allowed her to submit her own source to determine the strength of her medication and contradict the indication from THE PILL BOOK relied on by the ALJ.

- 14 -

The HEARINGS, APPEALS AND LITIGATION LAW MANUAL ("HALLEX") is a policy

manual written to convey "guiding principles, procedural guidance and information to the Office

of Hearing and Appeals Staff." HALLEX, Chapt. I-1-001. This Court may look to the HALLEX

as a guide for procedural rules in Social Security DIB cases. *C.f. Perkins v. Chater*, 107 F.3d

1290, 1294 (7th Cir. 1997). HALLEX provides: "The ALJ must not cite medical texts and

medical publications as the authority for resolving any issue. If it is necessary to refer to a

medical text or medical publication, the ALJ must submit the material to the claimant or the

representative for review and comment, and make the material part of the record." HALLEX,

I-2-825. Baker argues that because the ALJ used THE PILL BOOK as substantive evidence (to

resolve an issue) rather than as non-substantive evidence (not resolving any issue, such as merely

defining a word) he was required to give her notice and the opportunity to rebut this evidence.[13]

Baker further argues that if the ALJ would have informed her of his reliance on THE PILL BOOK

in determining Vicodin to be for "mild to moderate" pain, she could have proffered her own

definition of Vicodin from THE PHYSICIAN'S DESK REFERENCE as being for "moderate to

moderately severe" pain.

    The Court agrees that the ALJ erred because he did not proffer his medical reference to

Baker for review and comment. It is a long accepted practice of courts reviewing social security

disability claims to rely on medical texts to clarify technical terms. *Allen v. Sullivan*, 977 F.2d

385, 390 (7th Cir. 1992) (citing cases). However, the ALJ used THE PILL BOOK for more than a

mere definition – he used it to resolve the severity of the pain she was feeling, and used it to

---

[13] Baker concedes that "[u]sing a medical text as non-substantive evidence without pre-decision proffer does not raise a profound procedural due process concern." (Pls. Mem. at 11, n.6.)

determine her credibility. Specifically, the ALJ noted, "The fact that she does not take stronger medication suggests that her pain is not as severe as she has alleged." (R. at 15.) Had the ALJ given pre-decision notice of his reliance on THE PILL BOOK, Baker could have then proffered her own medical text, THE PHYSICIAN'S DESK REFERENCE, for the ALJ's consideration.[14] This process is required by the HALLEX, and was not performed by the ALJ.

Because the ALJ relied on THE PILL BOOK to determine the strength of Baker's medication without submitting the text to Baker and making it a part of the record, we cannot accept his conclusion on this issue. Instead, the case must be remanded for the ALJ to take action consistent with this opinion.

### D. The ALJ Must Reassess His Findings on Baker's Credibility in Light of the Court's Decision Regarding His Use of THE PILL BOOK.

Baker argues that the ALJ's evaluation of her activities in determining her credibility was erroneous. An ALJ's credibility determination will generally stand unless it is "patently wrong." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). However, the ALJ's report must contain specific reasons for his credibility determination. *Id.*

Baker relies on *Zurawski* and *Clifford* to argue that the ALJ wrongly assessed her credibility. In *Zurawski*, the ALJ was found to have erred because he merely stated that the claimant's claims were inconsistent with the medical evidence, but cited no specific inconsistencies. 245 F.3d at 887 (ALJ's determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently

_____

[14] The Court does not make any implicit or explicit findings regarding which text is more authoritative.

specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight") (quoting SSR 96-7p). In *Clifford*, the ALJ simply stated that the claimant's testimony was unsupported by medical evidence, but never articulated any specific medical evidence in support of his statement. 227 F.3d at 872.

Here, the ALJ relied on Baker's ability to grocery shop because it provided evidence contradicting the assessment by Baker's physician that she could lift no more than five pounds.[15] (R. at 15.) He discussed her scores on the MMPI-II test. (Id.) Additionally, the ALJ discussed all the medical evidence, both in Baker's favor and against her position. (R. at 11-14.) The ALJ made clear the weight he gave to the evidence and the reasons for the weight. These are exactly the type of specific articulated reasons required to make a proper credibility determination. Nevertheless, he also included the strength of the medication she was taking to determine that "her pain is not as severe as she has alleged." (R. at 15.) Because the Court determined the ALJ's reliance on THE PILL BOOK without a pre-decision proffer was erroneous, the credibility determination should be reevaluated by the ALJ to this extent.

Baker also argues that the ALJ improperly considered Baker's personal injury litigation and application for worker's compensation in determining her credibility. Baker relies on *Gossett v. Chater* for the proposition that this is an inadequate articulated reason for a lack of credibility. 947 F. Supp. 1272, 1280 (S.D. Ind. 1996). However, in *Gossett*, the court held that the ALJ erred in considering the claimant's application for DIB as a factor in determining her

---

[15] The fact that Baker rides around in a motorized wheelchair while shopping does not contradict the ALJ's finding relating to her ability to lift groceries.

credibility, noting that such a consideration "would be equally applicable to ALL social security claimants." *Id.* (emphasis in original). In this case, the ALJ did not take into account Baker's application for DIB, but other litigation in which she is involved. Obviously, *all* social security claimants are not involved in other litigation relating to their injuries or alleged disabilities. At least one other court has recognized that in some circumstances it may be proper to consider a claimant's other litigation as evidence of secondary motive for exaggerating symptoms or pursuing disability insurance benefits. *Gaddis v. Chater*, 76 F.3d 893, 895-96 (8th Cir. 1996).

Finally, Baker argues that the ALJ erroneously evaluated Baker's work history by comparing her past earnings to what she would receive under Supplemental Security Income (SSI). While it is true that Baker did not apply for SSI, the ALJ obviously made the comparison only to emphasize the low amount of Baker's previous earnings. Because information about a claimant's prior work record may be submitted by the claimant or requested by the ALJ, it cannot be erroneous for the ALJ to include it in his consideration. 20 C.F.R. §§ 404.1512(c)(3), 404.1529(c)(3).

For these reasons, while the Court finds that on several issues the ALJ committed no error in finding a lack of credibility, his finding should be reevaluated, as is necessary in accordance with this opinion.

## V.    **Conclusion**

For the above reasons, the Court reverses the Commissioner's final decision and remands this case to the ALJ for further proceedings consistent with this opinion. The Commissioner's motion for summary judgment is therefore denied, and Plaintiff's motion for summary judgment

is granted to the extent that this Court reverses and remands the Commissioner's decision, but denied to the extent that Plaintiff seeks a reversal and award of benefits.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: May 7, 2003.

Copies have been mailed to:

ERIC SCHNAUFER, Esq.                    CURT P. MARCEILLE, Esq.
15555 Sherman Avenue                     200 West Adams Street
Suite 303                                30th Floor
Evanston, IL 60201                       Chicago, IL 60606

Attorney for Plaintiff                   Attorney for Defendant